489 So.2d 106 (1986)
Steven J. KROUSE, Personal Representative of the Estate of Jeffrey B. Krouse, a Minor, Deceased, Appellant,
v.
Carole KROUSE and United Services Automobile Association, Appellees.
No. 85-2168.
District Court of Appeal of Florida, Third District.
May 13, 1986.
*107 Neal A. Roth, Steven R. Berger, for appellant.
Gilmour, Morgan & Rosenblatt and Yale L. Galanter, for appellees.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from a summary judgment determining as a matter of law that the suit of Steven Krouse, the father of Jeffrey Krouse and personal representative of Jeffrey's estate, against Carole Krouse and her insurer, United Services Automobile Association, is, in all aspects, barred by the doctrine of interspousal tort immunity. Concluding that the doctrine of interspousal tort immunity does not bar the personal representative's claim on behalf of the estate for funeral and medical expenses, we reverse the summary judgment in respect to that claim only; in all other respects, we affirm.
Jeffrey Krouse, a minor, was a passenger in an automobile driven by his mother, Carole Krouse, when Mrs. Krouse's automobile crossed the center line and struck another vehicle head on, killing Jeffrey. At the time of the accident, Jeffrey's parents were separated, and by the time Steven Krouse filed this action as personal representative of his son's estate, Steven and Carole were divorced.
As permitted by the wrongful death statute, the complaint sought recovery on behalf of Steven, as the surviving father of the decedent, and on behalf of Jeffrey's estate.[1] For the surviving father, it sought the value of his son's lost support and services, damages for the father's mental pain and suffering, and the medical and funeral expenses paid by Steven[2]; on behalf of the estate, it sought to recover the decedent's loss of earnings, loss of net accumulations beyond death, and medical and funeral expenses that have become a charge against the estate or which have been paid by or on behalf of the decedent.[3]
*108 We address first the claims on behalf of the surviving father for the value of his son's lost support and services and the mental pain and suffering undergone by the father. While in form these claims are brought by a personal representative, they are solely for the benefit of the father and are thus, in substance, claims by an about-to-be-divorced husband against his wife for negligence. As such, they are barred, in our view, by the combined effect of Snowten v. United States Fidelity and Guaranty Company, 475 So.2d 1211 (Fla. 1985), wherein it was held that the doctrine of interspousal immunity was not abrogated where the defendant spouse had insurance coverage, and Hill v. Hill, 415 So.2d 20 (Fla. 1982), holding to the same effect in suits where the plaintiff and defendant spouses were no longer living together.[4] While it is true that in the present case, unlike Hill, the parties were actually divorced when the action was brought, it is apparent that only their marital status at the time the cause of action arose is relevant to the question of whether interspousal immunity should bar the claim. This is so because, as Hill tells us, the bar against a suit by a separated spouse exists because to permit such a suit would not be "conducive to a reconciliation." Id. at 23. Since the public policy of saving foundering marriages is thus the rationale of Hill, it would be paradoxical indeed if one could avoid the bar of interspousal immunity merely by divorcing one's spouse before bringing the suit.
We turn next to the claim on behalf of the surviving father for medical and funeral expenses paid by him. Although, as Section 768.21(5) expressly provides, the father would ordinarily be entitled to recover these expenses from any tortfeasor, the doctrine of interspousal immunity prevents him from recovering, as in essence the present claim seeks to do, these expenses from his spouse. Snowten v. United States Fidelity and Guaranty Company, 475 So.2d 1211; Hill v. Hill, 415 So.2d 20. This does not mean, however, that the father is without remedy in respect to these expenses; he may, of course, claim these expenses from his son's estate.
Since the efficacy of the father's claim against his son's estate may depend on the ability of the estate to recover moneys from the mother of the decedent in the present lawsuit, we now consider the estate's claim against the mother. This claim, in our view, is governed by the principles established in Ard v. Ard, 414 So.2d 1066 (Fla. 1982). Although reaffirming its adherence to the doctrine of parental immunity, the Florida Supreme Court held in Ard that a child injured by a negligent parent could recover damages to the extent of the defendant parent's available liability insurance. The court explained that "[w]hen recovery is allowed from an insurance policy, the claimant will not force a depletion of the family assets at the expense of other family members... . [R]ather than a source of disharmony, the *109 action is more likely to ease the financial difficulty stemming from the injuries." 414 So.2d at 1068-69. In the present case, it is clear that the medical and funeral expenses have depleted the family assets,[5] and, consistent with Ard, we hold that the estate may recover these expenses in an action against the mother up to the limits of the mother's liability insurance. See § 768.21(6)(b), Fla. Stat. (1981) (permitting recovery of medical or funeral expenses that have become a charge to the estate excluding those recoverable under Section 768.21(5)).
However, in contrast to the estate's claims for medical and funeral expenses which in whole or in part will be attributable to the amount for which the father seeks reimbursement, its claims for loss of earnings,[6] although similarly a claim by the child's estate, does not stem from moneys paid out to others by a family member. Admittedly, the possible loss of a minor child's future earnings might result in the family coffers being smaller than originally anticipated. But the partial waiver of parental immunity allowed in Ard, despite the court's acknowledged concern about the possibilities of collusion and friction, was to prevent the child's injury from forcing "a depletion of family assets at the expense of the other family members" and was specifically designed to alleviate family disharmony by "eas[ing] the financial difficulties stemming from the injury." Ard v. Ard, 414 So.2d at 1068-69 (emphasis supplied). We are not convinced that the disharmony envisioned as arising from a depletion of family assets that Ard sought to prevent would arise from a loss of future earnings of a minor child. Thus, the rationale behind Ard's narrow exception to the doctrine of parental immunity is lacking here, while the possibilities of collusion and friction conspicuously remain.
The summary judgment under review is, accordingly, reversed in respect to the personal representative's claims on behalf of the estate for funeral and medical expenses, and affirmed in all other respects. The cause is remanded for further proceedings consistent with this opinion.
Affirmed in part; reversed in part, and remanded.
NOTES
[1] Section 768.20, Florida Statutes (1981), provides that the wrongful death action is to be brought by the decedent's personal representative "who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death."
[2] Survivors, as defined in Section 768.18(1), including parents, are entitled to recover "the value of lost support and services from the date of the decedent's injury to his death ... and future loss of support and services from the date of death," § 768.21(1), Fla. Stat. (1981), and "medical or funeral expenses due to the decedent's injury or death" where paid by the survivor, § 768.21(5), Fla. Stat. (1981). Additionally, "[e]ach parent of a deceased minor child may also recover for mental pain and suffering from the date of injury." § 768.21(4), Fla. Stat. (1981).
[3] These claims were brought pursuant to Section 768.21(6), which provides:

"(6) The decedent's personal representative may recover for the decedent's estate the following:
"(a) Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. Loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduced to present money value, may also be recovered:
"1. If the decedent's survivors include a surviving spouse or lineal descendants; or
"2. If the decedent is not a minor child as defined in s. 768.18(2) and does not have survivors as defined in s. 768.18(1).
"(b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under subsection (5)."
[4] Hill is an even stronger case for the abrogation of the doctrine of interspousal immunity because it was there alleged that the separated husband had committed intentional torts upon the plaintiff wife, clearly evincing marital disharmony. See also West v. West, 414 So.2d 189 (Fla. 1982) (reaffirming Hill, but noting that in the dissolution proceeding the court may take into account the intentional tort by ordering the offending spouse to pay necessary medical expenses not covered by insurance arising from the intentional tort and considering any permanent injury or loss of earning capacity arising from the tort in establishing the appropriate alimony).
[5] The record does not reveal whether Jeffrey had siblings. Given the divorce of Steven and Carole Krouse and the possibility that they may have no remaining children, the term "family" might seem a misnomer. Nonetheless, while no longer related by marriage, Steven and Carole may have continued financial obligations one to the other. As such, this case differs from Dressler v. Tubbs, 435 So.2d 792 (Fla. 1983), in which the Florida Supreme Court held that the interspousal immunity doctrine did not bar a suit by the wife's estate against the husband where the couple was killed in an accident negligently caused by the husband because in Dressler, "[t]here [was] no longer any marital unit to preserve," id. at 794, while in the present case, despite the death of the child, there is still a familial unit to preserve.
[6] Although the complaint seeks on behalf of the estate loss of net accumulations, Section 768.21(6)(a) permits this recovery only if, as is not the case here, the decedent has a surviving spouse or lineal descendants, or the decedent is not under the age of 25.